■ In the Matter of THELMA TOMASINO, Petitioner, v NEW YORK STATE EMPLOYEES' RETIREMENT SYSTEM, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at

Special Term, entered in Albany County) to review a determination of respondent denying petitioner's application to, *inter alia,* annul the option one-half retirement option established for the decedent. Decedent, petitioner's estranged husband, was employed as a security officer by the State of New York for about 22 years and was granted ordinary disability retirement effective July 21, 1977. By letters dated July 19, 1977 and August 11, 1977, the Comptroller advised decedent of his options under section 90 of the Retirement and Social Security Law and alerted him to the fact that August 19, 1977 was the selection deadline. Decedent failed to make any such selection and never designated a beneficiary so that with the passage of the deadline he was retired under option one-half by operation of law (Retirement and Social Security Law, § 90, subd bb, par 2). Decedent passed away on December 28, 1977 and on March 23, 1978 petitioner applied to the retirement system seeking an annulment of the option one-half and replacement or substitution therefor by option one with herself designated as the beneficiary.* Following a hearing, the application was denied and this article 78 proceeding was commenced. The Comptroller has exclusive authority to act upon all applications for any form of retirement (Retirement and Social Security Law, § 74, subd b; *Matter of Moore v Levitt,* 74 AD2d 971) and his determinations, when rational and supported by substantial evidence, must be upheld (*Matter of Nutt v New York State Employees' Retirement System,* 72 AD2d 898, 900). At bar, it is conceded that decedent took no action with the result that option one-half was invoked by operation of law (Retirement and Social Security Law, § 90, subd bb, par 2). In addition, petitioner neglected to make any election on his behalf though provided with the right to do so (Retirement and Social Security Law, § 90, subd a) and did not file her application until approximately eight months after the effective date of decedent's retirement. These facts being conceded, it can hardly be argued that the Comptroller's decision was arbitrary and capricious or lacked a rational basis (*Matter of Pentinen v New York State Employees' Retirement System,* 60 AD2d·366, mot for lv to app den 44 NY2d 647). While it is true, as petitioner·urges, that affirmative acts of an incompetent may be voided under certain circumstances (*Ortelere v Teachers' Retirement Bd. of City of N. Y.,* 25 NY2d 196), we perceive no such compelling circumstances to be present here. In *Ortelere* (*supra*), consideration was given to the clearly established fact that Mr. and Mrs. Ortelere were interdependent and deeply devoted each to the other and real partners in an ideal marriage of many years. The Court of Appeals found, in the light of this relationship, that her decision to change the option was so unwise and foolhardy that a fact finder might conclude that it was explainable only as a product of psychosis (*Ortelere v Teachers' Retirement Bd. of City of N. Y. supra,* p 206). Unfortunately, the instant petitioner's marriage with decedent bore little resemblance to an ideal union and, as petitioner related, they had come to realize several years before her husband's death that they could not live together and had in fact lived separate and apart and independent of each other. In view of this and the absence of convincing or any evidence that the incompetent (assuming deceased was so proven to be) would have made a different selection, "it is presumed that he would have chosen the option yielding the largest returns in his lifetime" (*Schwartzberg v Teachers' Retirement Bd. of City of N. Y.,* 273 App Div 240, 242-243, affd 298 NY 741). Decedent here may have been well aware that his inaction in the selection of an option would provide him by operation of law with the largest return during his lifetime and that this was the better course to follow in view of his independence following his broken

---

* *Option one-half provides the retiree with maximum lifetime benefits and a modest death benefit while option one provides a modest lifetime benefit for the retiree and a more generous death benefit.*

marriage. We find dispositive this court's decision in *McCarthy v Levitt* (59 AD2d 952, 953, mot for lv to app den 43 NY2d 647) wherein we stated: "While *Ortelere v Teachers' Retirement Bd. of City of N. Y.* (25 NY2d 196) holds that the affirmative acts of an incompetent may be voided under certain circumstances, it would be a dangerous precedent to grant benefits to an incompetent who failed to act, and to allow a beneficiary who also failed to take action to thereby gain by that inaction." Accordingly, the determination should be confirmed. Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Main and Yesawich, Jr., JJ., concur.

Mikoll and Weiss, JJ., dissent in the following memorandum by Weiss, J. Weiss, J. (dissenting). We respectfully dissent. It is well recognized that the Comptroller has exclusive authority to act upon all applications for any form of retirement (Retirement and Social Security Law, § 74, subd b), including the determination of the mental capacity of members to make applications and elections (*Matter of Morris v New York State Employees' Retirement System*, 6 AD2d 937). The hearing officer emphasized that petitioner, by her failure to elect an option on decedent's behalf (Retirement and Social Security Law, § 90, subd a), waived such right. This waiver, coupled with petitioner's failure to comply with the statutory filing deadline, was deemed to preclude annulment of the option established for decedent, regardless of the competency question. Since the Comptroller notified decedent on July 19, 1977 that his disability retirement had been approved, decedent was required to elect an option within 30 days (Retirement and Social Security Law, § 90, subd b). Moreover, the time for filing an option election, or withdrawal thereof, could not be extended more than 60 days after decedent's effective date of retirement (Retirement and Social Security Law, § 90, subd bb, par 1). Petitioner's application was filed more than eight months after the effective date of retirement, and thus the refusal to permit withdrawal may not be characterized as arbitrary and capricious (*Matter of Pentinen v New York State Employees' Retirement System*, 60 AD2d 366, mot for lv to app den 44 NY2d 647). However, our inquiry does not end with this determination. An option may still be voided where the retiree is afflicted by a mental illness in the nature of a psychosis which affects his rational ability to make an election of benefits (*Ortelere v Teachers' Retirement Bd. of City of N. Y.*, 25 NY2d 196). Avoidance is premised on the rule stated in section 18C of the Restatement 2d, Contracts, and reiterated by this court in *Keith v New York State Teachers' Retirement System* (46 AD2d 938), to wit, that although the retiree "had not established any notice on the part of the retirement system as to the particular incompetency, the election was voidable if there was proof that the retirement system would not be prejudiced or that avoidance would not be inequitable" (*Matter of Pentinen v New York State Employees' Retirement System*, 60 AD2d 366, 368, *supra*). It is apparent that the hearing officer never reached the issue of incompetency, together with the balancing of the equities relative to avoidance. These failures constitute error as a matter of law. A review of the record establishes that the retiree was suffering from a mental illness in the nature of a psychosis that affected his decision-making capacity. Petitioner's expert, Dr. McGarry, testified that he doubted that decedent could make the decision as to which option to choose. Significantly, the system was notified of this condition well in advance of the retirement date by Dr. Post, who examined the retiree at the system's request. On March 21, 1977, he diagnosed the retiree as a "schizoid character with periodic decompensation and psychotic episodes", suffering from "organic mental syndrome with impaired mental functioning defects of memory, recall and recollection, poor orientation to time and place and intellectual deterioration". Dr. Post concluded that the retiree was unable to

perform his duties as a security officer and that "he was non compos mentis * * * [h]e was not very competent." Finally, the record reveals no significant changes of position by the system beyond those that flow from the barest actuarial consequences of benefit selection. Nonetheless, respondent contends that petitioner should not be allowed to benefit from her own inaction. In *McCarthy v Levitt* (59 AD2d 952, mot for lv to app den 43 NY2d 647), this court noted that the *Ortelere* case applied only to the affirmative acts of an incompetent, finding "it would be a dangerous precedent to grant benefits to an incompetent who failed to act, and to allow a beneficiary who also failed to take action to thereb gain by that inaction" (*McCarthy v Levitt*, 59 AD2d 952, 953, supra). *McCarthy*, however, is distinguishable from the instant matter in that the employee there died without ever having retired. Moreover, *Ortelere* focuses upon whether the retiree's incompetence works to effect an improper result. The equities involved should not hinge on whether or not the retiree actually selected an option, when, as here, the mental incompetence clearly affected his ability to do so. While a strict interpretation of the time limitations of section 90 is encouraged by respondent, we must recognize the "special relationship" between the retirement system and its members (*Keith v New York State Teachers' Retirement System,* 46 AD2d 938, 941, supra). Essentially, "the nature of the system * * * is the protection of its members and those in whom its member have an interest" (*Ortelere v Teachers' Retirement Bd. of City of N.Y.,* 25 NY2d 196, 205, supra). On balance, the factual situation herein is legally sufficient to invoke the doctrines set forth in *Ortelere v Teachers' Retirement Bd. of City of N.Y.* (supra) and *Keith v New York State Teachers' Retirement System* (supra). The equity of this result is readily apparent in view of the stark contrast in monetary benefits available under the respective options.[*] Moreover, the facts do not warrant an ·estoppel against petitioner, despite her failure to elect a timely option (see *Schwartzberg v Teachers' Retirement Bd. of City of N.Y.,* 273 App Div 240, affd 298 NY 741). Accordingly, the relief demanded in the petition, insofar as it seeks annulment of the option one-half retirement option established under section 90 (subd bb, par 2) of the Retirement and Social Security Law should be granted. However, since decedent neglected to name a beneficiary, the matter should be remitted to the Comptroller for a determination of the option and beneficiary which " 'would, in all probability, have been the choice of the incompetent if he had been of sound mind' " (*Schwartzberg v Teachers' Retirement Bd. of City of N.Y.,* 273 App Div 240, 244, supra).

---

* Under option one-half, decedent received $287.33 per month during his retirement, while his estate received the value of his contributions to the system ($236), the monthly annuity payment owing to decedent ($242.13), and a death benefit of $3,000. Under Option One, decedent's monthly payment would have been a lesser amount of $246, but his estate would have received the present actuarial value of his monthly retirement which amounted to approximately $40,000.